# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-40303
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

November 5, 2014

Lyle W. Cayce
Clerk

MARIA LAURA SANTOS VAILLANCOURT,

Plaintiff - Appellee

v.

PNC BANK, NATIONAL ASSOCIATION,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, JONES, and HIGGINSON, Circuit Judges.

PER CURIAM:

PNC Bank, N.A. appeals a district court remand order. The district court, after dismissing the plaintiff's two federal claims, declined to exercise supplemental jurisdiction over the six remaining state law claims. PNC Bank takes issue with this decision, arguing that because the district court wrongly held that the non-diverse defendants were properly joined, it mistakenly concluded that it lacked diversity jurisdiction, and accordingly, its decision to decline jurisdiction was in error.

We agree.

No. 14-40303

I.

This dispute began eleven years ago in Laredo, Texas. There, in July 2003, Maria Laura Santos Vaillancourt ("Ms. Vaillancourt"), a Texas resident, and Louis Vaillancourt ("Mr. Vaillancourt") purchased a piece of property, and simultaneously executed a deed of trust, secured by a promissory note.[1] The note was assigned to PNC Bank's predecessor.[2] Several years later, though, Ms. Vaillancourt ran into difficulties making her payments. In 2010, she entered into a mortgage modification agreement with PNC Bank, and then, in March 2013, she filed a request for mortgage assistance with PNC Bank.[3] On June 4, 2013, her property was sold at foreclosure.[4] In her complaint, Ms. Vaillancourt alleged that she never received notice of this sale.[5] PNC Bank, however, provided a certified mail receipt indicating that such notice was sent to her on March 21, 2013, as well as an affidavit by an agent of the PNC Bank, who averred that the company had complied with all statutorily required notices.[6]

Litigation ensued. On July 15, 2013, Ms. Vaillancourt filed suit in Texas state court against National City Mortgage Company, PNC Mortgage (a division of PNC Bank), three individual Texas residents named as substitute trustees by the mortgage holder (the "Substitute Trustees"), Mr. Vaillancourt, and a series of John and Jane Doe defendants.[7] She alleged two federal and

---

[1] *See* Compl. ¶ 9-12, R.21.

[2] *See id.* ¶ 10; Appellant Br. 3 n.7.

[3] Compl. ¶¶ 16-18.

[4] *Id.* ¶ 20. Two days after the sale took place, Ms. Vaillancourt received a letter from PNC Bank acknowledging its receipt of her assistance application. *Id.* ¶ 19.

[5] *Id.* ¶ 21.

[6] *See* Def.'s Mot. Dismiss, Ex. D, Aff., R. 76; *id.*, Ex. E, Receipt, R. 99.

[7] Compl. ¶¶ 1-6.

six state counts.[8]  PNC Bank moved to dismiss the complaint in its entirety.[9]

On March 5, 2014, the district court granted PNC Bank's motion with respect

to the federal claims.[10]  It also concluded that the Substitute Trustees were

properly joined, and thus that there was not complete diversity as to the state

law claims.[11]  Accordingly, the court declined to exercise supplemental

jurisdiction over the remaining state law claims and remanded those back to

state court.[12]

This timely appeal follows.

## II.

## A.

"Though we typically cannot review an appeal of an order remanding a

case to state court, we have jurisdiction to do so when the decision to remand

is based 'on an affirmative exercise of discretion rather than on a finding of

lack of jurisdiction.'"[13]  In determining the basis for the remand order, we look

to the stated rationale employed by the district court.[14]  Within this circuit, a

decision by a district court to decline to exercise supplemental jurisdiction and

remand the remaining claims falls within that discretionary ambit.[15]

---

[8] *Id.* ¶¶ 23-60.  The first federal count alleged violations of the due process clauses of
the federal and Texas constitution, and the second alleged noncompliance with the notice
provisions of the Home Affordable Modification Program ("HAMP").  *Id.* ¶¶ 23-28, 38-41.

[9] Def.'s Mot. Dismiss, R. 46.

[10] Mem. & Order, R. 116.

[11] *Id.* at 4-5.

[12] *Id.* at 3.

[13] *Cuevas* v. *BAC Home Loans Servicing, LP*, 648 F.3d 242, 247 (5th Cir. 2011) (quoting
*Adair* v. *Lease Partners, Inc.*, 587 F.3d 238, 240 (5th Cir. 2009)).

[14] *See Regan* v. *Starcraft Marine, LLC*, 524 F.3d 627, 631 (5th Cir. 2008) ("[W]hen the
trial court 'clearly and affirmatively' states that it is remanding on a ground other than a
lack of subject matter jurisdiction, the [28 U.S.C. §] 1447(d) bar to appeal does not apply.")
(quoting *Tillman* v. *CSX Transp.*, 929 F.2d 1023, 1027 (5th Cir. 1991)).

[15] *Cuevas*, 648 F.3d at 247-48.

No. 14-40303

In evaluating situations where, as here, the district court declined to exercise supplemental jurisdiction after first concluding it lacked original subject matter jurisdiction, our path is set by two recent decisions, *Cuevas* v. *BAC Home Loans Servicing, LP*[16] and *Adair* v. *Lease Partners, Inc.*[17]  In both of these cases, we held that the reviewing court's task is to determine whether the district court had original subject-matter jurisdiction over the remanded claims.[18]  If it did, remand is improper, because "[w]hen the district court has original subject matter jurisdiction over state law claims, the exercise of that jurisdiction is mandatory."[19]

## B.

Here, the district court explicitly based its remand order on its decision to decline to exercise supplemental jurisdiction.[20]    Accordingly, we have appellate jurisdiction.[21]    Our inquiry begins – and ends – by determining

---

[16] 648 F.3d 242 (5th Cir. 2011).

[17] 587 F.3d 238 (5th Cir. 2009).

[18] *Cuevas*, 648 F.3d at 250; *Adair*, 587 F.3d at 245.

[19] *Cuevas*, 648 F.3d at 250.  *Adair* indicates that this conclusion is based on the fact that the district court, faced with mandatory subject-matter jurisdiction, lacks discretion to remand the case, 587 F.3d at 245, while *Cuevas* is not explicit about whether the district court lacks discretion to remand or abuses its discretion in remanding a case in which it had mandatory subject matter jurisdiction, 648 F.3d at 251.  The former inquiry – whether the district court had discretion – is reviewed de novo, and the latter inquiry – whether the court properly exercised its discretion to remand – is reviewed for abuse of discretion.  *Cuevas*, 48 F.3d at 247.  In this situation, however, given that a district court is obligated to exercise its mandatory jurisdiction, *Adair*, 587 F.3d at 245 (citing *Buchner* v. *F.D.I.C.*, 981 F.2d 816, 821 (5th Cir. 1993)), a court's refusal to do so would by definition be an abuse of discretion, and thus the difference between the two grounds is without distinction.

[20] Mem. & Order 3.

[21] We recognize that this investigation of a court's decision to decline to exercise supplemental jurisdiction, which necessarily requires determining whether the district court had original subject matter jurisdiction in the first place, is in some tension with 28 U.S.C. § 1447(d)'s command that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise," which the Supreme Court has construed to insulate from appellate review remands made on the basis of subject matter jurisdiction. *See Quackenbush* v. *Allstate Ins. Co.*, 517 U.S. 706, 711 (1996).  We are not the first to observe such a tension.  *See Regan*, 524 F.3d at 631 (noting that the Supreme Court, in *Powerex Corp.* v. *Reliant Energy Servs.*, 551 U.S. 224, 234 (2007), stated in dicta that it was "far from clear"

4

No. 14-40303

"whether the district court had diversity jurisdiction over the state law claims at the time of the remand."[22]

Ordinarily, for diversity jurisdiction to lie, there must be complete diversity between parties, which "requires that all persons on one side of the controversy be citizens of different states than all persons on the other side."[23] There is, however, a "narrow exception" to that rule for situations of improper joinder, [24] where, as relevant here, the party seeking removal (or challenging remand) demonstrates "that there is no possibility of recovery by the plaintiff against an in-state defendant."[25] We usually answer this question by "conduct[ing] a [Federal Rule of Civil Procedure] 12(b)(6)-type analysis," and if the plaintiff would survive a motion to dismiss, she is properly joined.[26] If, however, the plaintiff has "misstated or omitted discrete facts that would determine the propriety of joinder," the court may "pierce the pleadings and conduct a summary inquiry."[27]

C.

Neither party challenges the conclusion that PNC Bank is diverse to Ms. Vaillancourt. Our task, then, is to determine whether any of the non-diverse defendants – the Substitute Trustees or Mr. Vaillancourt – were improperly joined.

that a remand based on a discretionary decision not to retain supplemental jurisdiction was reviewable). Nonetheless, on-point circuit precedent compels our course. *See Cuevas*, 648 F.3d at 249-50; *Adair*, 587 F.3d at 240.

[22] *Cuevas*, 648 F.3d at 248.

[23] *Harvey* v. *Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (quoting *McLaughlin* v. *Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004)).

[24] *McDonal* v. *Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005).

[25] *Id.* (quoting *Smallwood* v. *Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)).

[26] *Smallwood*, 385 F.3d at 573.

[27] *Id.*

5

No. 14-40303

The district court held that the Substitute Trustees were properly joined, concluding that Ms. Vaillancourt, by stating that she had not received notice of the foreclosure sale, had adequately "allege[d] that the trustees failed to comply with the notice provisions of Texas Property Code [the "Code"] § 51.002."[28]  This section of the Code charges the mortgage servicer with specific notice obligations before a foreclosure sale may commence.  Actual notice to the debtor, however, is not required, as the Code "only requires the provision of constructive notice of an intent to foreclose."[29]  The Code defines sufficient service, specifying that:

> Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address.  The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.[30]

Here, PNC Bank introduced evidence of service, including a certified mail receipt, indicating that the relevant notices were sent to Ms. Vaillancourt more than the statutorily mandated twenty-one days before the foreclosure sale occurred.[31]  It also introduced an affidavit by Rachel Moon, a representative of the law firm administering the foreclosure, where she averred that "[a]ll notices of acceleration were served . . . by certified mail at the last known address of each such debtor in accordance with the law."[32]  Ms. Moon indicated that this statement was based upon her review of records gathered in the regular course of business, as well as her "general knowledge of mortgage servicer practices."[33]  This evidence that the required notice was sent is enough

---

[28] Mem. & Order 5; *see also* Compl. ¶¶ 47-49.

[29] *Robinson* v. *Wells Fargo Bank, N.A.*, 576 F. App'x 358, 361 (5th Cir. 2014).

[30] Tex. Prop. Code § 51.002(e).

[31] *See* Mot. Dismiss, Ex. E, Notices, R. 79-99.

[32] Mot Dismiss, Ex. D., Moon Aff., R. 76.

[33] *Id.*

to deny the failure-to-notice claim which forms the gravamen of Ms. Vaillancourt's complaint.[34]

Next, the district court concluded that Ms. Vaillancourt sufficiently alleged that "the [substitute] trustees acted in bad faith by submitting a false affidavit" averring compliance with the state notice requirements, and was thus properly joined.[35] The affidavit in question, however, appears to satisfy the Code's requirements. In any event, simply questioning the competency of an affiant in general terms in a complaint, when confronted with contrary and facially sufficient exhibit evidence, is insufficient to defeat a motion to dismiss-type inquiry.[36]

Finally, while Ms. Vaillancourt names Mr. Vaillancourt as a defendant in the action, none of her eight causes of action are asserted against him.[37] Since he would not be liable to her, he is improperly joined.[38]

## D.

PNC Bank has satisfied its burden of proving improper joinder of the Substitute Trustees and Mr. Vaillancourt, the remaining parties to the suit are

---

[34] *See Rodriguez* v. *Ocwen Loan Servicing, LLC*, 306 F. App'x 854, 856 (5th Cir. 2009) (holding that an assertion that plaintiff did not receive actual notice "cannot state a claim for relief" under Texas law).

[35] Mem. & Order 4 n.4. *See also* Compl. ¶ 55 ("An affidavit on behalf of a corporation (in this case Defendant PNC Mortgage) must show that it was made by an authorized officer or agent and the affiant must swear to the facts. The proper function of an affidavit is to state facts, not conclusions; affidavits that merely state conclusions rather than facts are insufficient. Plaintiff questions whether Rachel Moon knew the facts which she alleged were true of her own personal knowledge.").

[36] *See, e.g.*, *Ocwen*, 306 F. App'x at 856 (holding that plaintiff must "specifically refute" an affidavit in compliance with Texas Property Code § 51.002(e) to defeat a motion to dismiss); *United States ex rel. Riley* v. *St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (holding that if an allegation in a complaint "is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls").

[37] *See generally* Compl.

[38] No claims are asserted in the complaint against the John and Jane Doe defendants. Even if they were, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b).

No. 14-40303

diverse. Accordingly, "the district court had diversity jurisdiction over the state law claims at the time of remand," and "the exercise of that jurisdiction is mandatory."[39] The district court's decision to remand was thus in error.

### III.

For the aforementioned reasons, we REVERSE the district court's decision to remand the state law claims to Texas state court and REMAND for proceedings consistent with this opinion.

---

[39] *Cuevas* v. *BAC Home Loans Servicing, LP*, 648 F.3d 242, 250 (5th Cir. 2011).